IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| ROBIN STASCHEIT, CORBIN LEACH, ) <br> and CARMEN FRIESON, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> O'SPRINGS INN – N, LLC d/b/a ) <br> HOLIDAY INN EXPRESS, ) <br> ) <br> Defendant. ) | Jury Demanded <br><br> Civil Action No. _____ |

## COMPLAINT

Come Plaintiffs and sue Defendant for unlawful employment actions for a total sum of $1.5 million. Plaintiffs would show unto the Court as follows:

### I. JURISDICTION

1. The jurisdiction of this Court is invoked by Plaintiffs pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3) to secure protection and redress for the deprivation of rights granted by Title VII of the U.S. Civil Rights Act of 1964, as amended ("Title VII"), and by the Tennessee Human Rights Act ("THRA") providing for injunctive and other relief against race discrimination and/or unlawful retaliation in employment.

### II. NATURE OF PROCEEDING

2. This is a proceeding for back pay and benefits due Plaintiffs; for injunctive relief requiring Defendant to reemploy Plaintiffs; for compensatory damages; for humiliation and embarrassment damages; punitive damages; attorney fees; costs; and for such additional damages as may be necessary to effectuate the purposes of Title VII and the THRA.

## III. THE PARTIES

3. Plaintiff Robin Stascheit ("Stascheit") is a white female and a resident of Whitfield County, Georgia.

4. Plaintiff Corbin Leach ("Leach") is a black male and a resident of Hamilton County, Tennessee.

5. Plaintiff Carmen Frieson ("Frieson") is a black female and a resident of Hamilton County, Tennessee.

6. Defendant, a Tennessee corporation, owns and operates hotel franchises, including a Holiday Inn Express in Ooltewah, Hamilton County, Tennessee.

7. The acts complained of herein took place in Hamilton County, Tennessee.

## IV. FACTUAL BASES OF PLAINTIFF'S CLAIMS

8. Stascheit was employed by Defendant as the General Manager at its Ooltewah, Holiday Inn Express property from October 2010 until her termination on January 14, 2013.

9. Leach was employed by Defendant at the Ooltewah Holiday Inn Express as the Executive Housekeeper from January 2011 until his termination on January 21, 2013.

10. Frieson was employed at the Ooltewah Holiday Inn Express as the Assistant Executive Housekeeper from November 2010 until her termination on January 18, 2013.

11. At all times relevant to this action, Defendant owned and operated two hotel properties in Ooltewah, Hamilton County, Tennessee – a Holiday Inn Express and a Hampton Inn. These two hotel properties are adjacent to one another.

12. At all relevant times, the Hampton Inn employed no blacks.

13. During the early autumn of 2011, Terry Ammons (General Manager of the Hampton Inn also owned by Defendant) and Roy Davis (then-Vice President of Operations) advised Stascheit that she was hiring too many blacks.

14. In November 2011, Davis told Stascheit that Defendant's owners did not like seeing a lot of blacks in the hotel. Davis emphasized that the owners wanted the "culture" of the Holiday Inn Express to mirror that of the Hampton Inn – i.e., no black employees.

15. Stascheit immediately and unequivocally expressed her objection to this directive, and expressed her intention not to comply with it. Davis informed Stascheit that he would relay her objections to the owners.

16. Davis retried in November 2012, and Terry Ammons – the General Manager at the adjacent Hampton Inn – was promoted to Vice-President of Operations.

17. Shortly after his promotion, Ammons met with Stascheit and again repeated that the owners were concerned about the hotel's "culture." Ammons then stated that the owners wanted the Holiday Inn Express "staff to look, feel, and sound the same way as the Hampton Inn." Ammons asked Stascheit if she was willing to lose her job for the sake of her staff, clearly implying that Stascheit's failure to comply with ownership's directives regarding hiring would result in an adverse employment action.

18. In early December 2012, an outside consultant conducted an inspection of the Holiday Inn Express and determined that the hotel's "culture" was fine, and that the hotel had scored higher than all other hotels in the region.

19. In early January 2013, the Holiday Inn Express' Assistant General Manager resigned, leaving an opening in that position.

20. Leach applied for the vacant Assistant General Manager position.

21. Despite his superior qualifications, and General Manager Staschiet's preference for placing him in the position of Assistant General Manager, Ammons filled the position with a white male.

22. On January 14, 2013, Stascheit was fired by Defendant's owner, Ben Frizzell, III.

23. During the termination meeting, Frizzell continued to comment on the need to change the "culture" of the Holiday Inn Express.

24. Upon Stascheit's termination, Ammons immediately became the acting General Manager of the Holiday Inn Express.

25. Within a few days of Ammons assuming the role of General Manager at the Holiday Inn Express, Ammons reassured Leach that his job was safe and that Leach's department would not be altered. The very next day, a rooms inspection was performed by an outside person. The inspection revealed a few minor deficiencies.

26. As a result of this inspection, Ammons met with Leach and asked that Leach remedy the minor deficiencies.

27. In this meeting, Ammons also expressed his desire to fire Frieson, who was Leach's assistant.

28. Ammons claimed that Frieson the day before had "stolen time" by leaving the property without clocking out. Leach defended Frieson, noting that Frieson's absence the previous day had been approved due to the school system's inclement-weather early dismissal of students. (Frieson had to quickly leave the hotel to pick up her school-aged children. She then returned to the hotel after taking her children to her mother's house.)

29. On January 18, 2013, Ben Frizzell III came to the Holiday Inn Express and held a meeting with all of the management-level employees, where he again emphasized the need for the hotel to be "re-cultured".

30. On that same day, Ammons fired Frieson for the stated reason of "stealing time", despite Ammons' knowledge that Frieson's actions were known of and approved by management.

31. Frieson was replaced by a white female, Melanie Prince, whom Stascheit had previously terminated for insubordination when Ms. Prince stated that she would not work for "that black boy", referring to Leach.

32. Around the time of Frieson's termination, Ammons re-hired a white employee – Dakkota Baker – who had previously been terminated by Stascheit for stealing time.

33. On January 21, 2013, Ammons fired Leach for the stated reason of poor job performance. At the time of this termination, Leach had resolved all of the problems that were addressed in the rooms inspection.

34. Leach was replaced by a white female, Patricia Prince, whom Stascheit had previously terminated for poor job performance.

35. With the terminations of Frieson and Leach, no management-level employees at the Holiday Inn Express were black.

## V. CAUSES OF ACTION

Race Discrimination

36. In terminating Leach because of his race, Defendant is in violation of the THRA and Title VII.

37. In terminating Frieson because of her race, Defendant is in violation of the THRA and Title VII.

38. In refusing to promote Leach because of his race despite his superior qualifications for the Assistant General Manager position, Defendant is in violation of the THRA and Title VII.

Retaliation

39. In terminating Stascheit because of her opposition to practices declared illegal by the THRA and Title VII, Defendant is in violation of the THRA and Title VII.

40. Defendant is responsible for the acts of its supervisory agents.

## VI. JURISDICTIONAL PREREQUISITE

41. Plaintiffs timely filed Charges of Discrimination with the EEOC based on the facts set forth above. On September 30, 2013, Plaintiffs received Notices of Right to Sue from the EEOC.

## VII. DAMAGES

42. As a result of the wrongful actions of Defendant, Plaintiffs have suffered both financially and emotionally. Plaintiffs have lost job opportunities, wages and benefits, and have experienced mental anguish and grief as a result of Defendant's unlawful actions.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray as follows:

a. That the Court issue and serve process on Defendant and require Defendant to answer within the time prescribed by law;

b. That upon the hearing of this cause, Plaintiffs be awarded judgment for damages for lost wages and the value of all employment benefits which they have lost from the date of Defendant's discriminatory actions;

c. That the Court issue an injunction requiring Defendant to re-employ Plaintiffs at their former positions or at an equivalent job with all employment rights and benefits to which they would have been entitled but for their discharge, and without harassment or illegal conditions imposed on their jobs, or, in the alternative, front pay and benefits in lieu of reinstatement.

d. That Plaintiffs be awarded additional compensatory damages, including damages for humiliation and embarrassment, emotional distress, and grief as are allowed pursuant to Title VII and the THRA;

e. That Plaintiffs be awarded punitive damages pursuant to Title VII;

f. That Plaintiffs be awarded attorney fees and litigation expenses, pursuant to the THRA and Title VII;

g. That Plaintiff be awarded costs of this action, pursuant to the THRA and Title VII;

h. That Plaintiff be awarded such further relief as the Court deems proper; and

i. Plaintiff demands a jury to try all claims and issues triable by a jury.

Respectfully submitted,

BURNETTE, DOBSON & PINCHAK

By: s/ Doug S. Hamill
Doug S. Hamill, BPR No. 22825
Counsel for Plaintiff
711 Cherry Street
Chattanooga, Tennessee 37402
Tel: (423) 266-2121
Fax: (423) 266-3324
dhamill@bdplawfirm.com